UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOIS MARTIN, | No. 2:13-cv-2671 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On June 18, 2010, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on January 23, 2010. (Transcript

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See Dkt. Nos. 8 & 10.)

1

("Tr.") at 24, 236-246.) Plaintiff's applications were denied initially, (id. at 165-70), and upon reconsideration. (Id. at 172-77.)

Thereafter, plaintiff requested a hearing and hearings were held before an Administrative Law Judge ("ALJ") on February 1, 2012 and May 24, 2012. (Id. at 74-152.) Plaintiff was represented by an attorney and testified at those administrative hearings. (Id. at 74, 106.) In a decision issued on June 14, 2012, the ALJ found that plaintiff was not disabled. (Id. at 34.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since January 23, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: status post fracture collar bone, ribs and right shoulder, status post closed head injury, degenerative joint disease bilateral knees, obesity, degenerative disc disease, affective disorders, personality disorder, somatoform disorders and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand or walk 4 hours in an 8 hour day, stand or walk no more than 60 minutes continuously, sit 6 hours and 8 hour (sic), never climb ladders, occasionally climb stairs, frequently balance, occasionally stoop, crawl, crouch, kneel; no limitations in the use of bilateral upper, never participate in complex tasks, can do constant simple repetitive tasks, no more than frequent interaction with the public, is limited to tasks that she performs independently on her own but cannot participate in activities as a team member.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on October 28, 1973 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 26-34.)

On August 19, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's June 14, 2012 decision. (Id. at 3-5.) After receiving an extension of time to file a civil action, (id. at 1-2), plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on December 30, 2013.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step

process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts that the ALJ's treatment of the medical opinion evidence of record constituted error in her case.[2] (Pl.'s MSJ (Dkt. No. 15) at 9-14.[3]) Specifically, plaintiff argues that the ALJ improperly rejected the opinions offered by Dr. Leland Luna and Dr. Ronald Ruff.

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a

---

[2] Plaintiff's motion asserts two separate claims of error with respect to the ALJ's treatment of the medical opinion evidence. For purposes of efficiency, however, the court will discuss those claims together as a single claim.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).  The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.)  In addition, greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'"  Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)).  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

    Here, on February 13, 2012, Dr. Leland Luna, plaintiff's treating physician, completed a Physical Residual Functional Capacity Questionnaire addressing plaintiff's impairments and limitations.  (Tr. at 582-85.)  The ALJ recounted Dr. Luna's opinion, noting that it limited plaintiff to carrying 10 pounds occasionally, 20 pounds rarely, occasionally twisting, stooping, bending and climbing stairs, while rarely climbing ladders and crouching.  (Id. at 30.)  The ALJ also noted that it was Dr. Luna's opinion that plaintiff would be absent from work "about 2 days per month as a result of her impairment."  (Id.)

    The ALJ, however, afforded Dr. Luna's opinion "little weight," citing two explicit reasons.  (Id.)  First, the ALJ found that Dr. Luna was "not a physical doctor," mistaking Dr.

/////

/////

5

Luna for a "D.C.," doctor of chiropractic. (Id.) However, Dr. Luna was in fact a Doctor of Osteopathy.[4] "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources,' which include osteopathic doctors." Tippie v. Astrue, 791 F.Supp.2d 638, 654 (N.D. Iowa 2011) (quoting 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1)). See also Gonzales v. Colvin, No. EDCV 13-1421-JPR, 2014 WL 4656470, at *3, n.3 (C.D. Cal. Sept. 17, 2014) ("A doctor of osteopathic medicine is an acceptable medical source.")

The ALJ also rejected Dr. Luna's opinion because Dr. Luna's "first contact with claimant was April 18, 2011." (Tr. at 30.) As noted above, Dr. Luna rendered his opinion regarding plaintiff's physical residual functional capacity on February 12, 2012. (Id. at 585.) The question before the ALJ was whether plaintiff had been under a disability "from January 23, 2010, through the date of [the] decision," which was June 14, 2012. (Id. at 34.) It is therefore entirely unclear why the ALJ believed that Dr. Luna's opinion should be rejected simply because he began treating plaintiff on April 18, 2011.[5]

With respect to Dr. Ronald Ruff, on May 31, 2011, Dr. Ruff examined plaintiff and thereafter issued a Report of Neuropsychological Examination. (Id. at 545-63.) On February 22, 2012, Dr. Ruff completed a Mental Residual Functional Capacity Questionnaire, opining that plaintiff was moderately limited with respect to several areas of functioning and estimating that
/////

---

[4] Defendant concedes that the ALJ's assertion was incorrect, stating that "the ALJ was wrong about Dr. Luna's degree . . . ." (Def.'s MSJ (Dkt. No. 22) at 16.)

[5] Defendant attempts to characterize the ALJ's reference to the April 18, 2011 date as an argument that Dr. Luna had a "limited relationship," with plaintiff. (Def.'s MSJ (Dkt. No. 22) at 16.) However, why a span of ten months, the time between plaintiff's initial visit and the date Dr. Luna rendered the medical opinion in question, would be characterized as limited is unclear to the court. Nor was that a reason given by the ALJ in giving the opinion limited weight. The court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. See Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ–not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner).

plaintiff would be absent from work about four days per month as a result of her impairments. (Id. at 576-81.)

The ALJ acknowledged Dr. Ruff's February 22, 2012 opinion but assigned it only "some weight," stating

> Dr. Ruff saw the claimant only twice, and is therefore not a treating source. He relied only on claimant's reported symptoms without a review of claimant's medical record. He based her need to rest during the day and anticipated that claimant would miss days because of physical pain rather than any psychological symptoms. I am more persuaded by testimony of medical expert Dr. Simonds and consultative examinations in October 2010.

(Id. at 31.)

The fact that Dr. Ruff saw plaintiff on only two occasions and was not a treating physician is not a specific and legitimate reason to reject his opinion. Indeed, many examining physicians render an opinion after only a single examination of the patient. Moreover, the ALJ's assertion that Dr. Ruff "relied only on claimant's reported symptoms without a review of claimant's medical record," is belied by Dr. Ruff's own May 31, 2011 report. (Id. at 31.) That May 31, 2011 report is detailed and 19-pages in length and was completed by Dr. Ruff and Dr. Serana Chester. The report explicitly states that Dr. Ruff reviewed plaintiff's medical records and quotes nearly an entire page of selected relevant excerpts from those medical records. (Id. at 549.)

With respect to the ALJ's statement that Dr. Ruff based plaintiff's "need to rest during the day and anticipated that claimant would miss days because of physical pain rather than any psychological symptoms," the ALJ fails to offer any support for this conclusory assertion. (Id. at 31.) Finally, by stating simply that he was "more persuaded by the testimony of medical expert Dr. Simonds," a nonexamining physician, as well as the "consultative examination in October 2010," the ALJ again failed to provide a proper specific and legitimate reason supported by substantial evidence in the record to reject Dr. Ruff's opinion. See Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"); Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1202

1  (9th Cir. 2008) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."); Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) ("most recent medical reports are highly probative").

Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate reasons supported by substantial evidence in the record to reject the opinion of treating physician Dr. Luna and the opinion of examining physician Dr. Ruff. Plaintiff, therefore, is entitled to relief with respect to this claim.

## SCOPE OF REMAND

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021. See also Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court finds that the record has been fully developed, that the ALJ failed to provide a legally sufficient reason for rejecting the medical opinions offered by plaintiff's treating physician, Dr. Luna, and an examining physician, Dr. Ruff. Moreover, if the medical opinion offered by Dr. Luna were properly credited, the ALJ would be required to find plaintiff disabled on remand. In this regard, when asked at the May 24, 2012 administrative hearing a hypothetical

/////

that was less restrictive than the limitations indicated by Dr. Luna's opinion[6] the vocational expert testified that even those less restrictive limitations would preclude employment in the local or national economy.[7] (Tr. at 102-04.)

Accordingly, the court finds that in this case it is appropriate to remand with the direction to award benefits. See Behling v. Colvin, 603 Fed. Appx. 541, 543 (9th Cir. 2015) ("Based on the vocational expert's hearing testimony, who responded that a person with Behling's limitations would be precluded from sustained work activity, there is substantial evidence to support a conclusion that further proceedings are not required to determine Behling's RFC."); Martinez v. Colvin, 585 Fed. Appx. 612, 613 (9th Cir. 2014) ("[I]f Martinez's testimony and Dr. Novak's opinion were properly credited, Martinez would be considered disabled. We therefore reverse the decision of the district court and remand with instructions to remand to the ALJ for the calculation and award of benefits")[8]; Garrison, 759 F.3d at 1023 ("Garrison satisfies all three conditions of the credit-as-true rule and . . . a careful review of the record discloses no reason to seriously doubt that she is, in fact, disabled. A remand for a calculation and award of benefits is therefore required under our credit-as-true precedents."); Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

---

[6] The ALJ's hypothetical posed to the vocational expert inquired about an individual who could lift or carry 20 pounds occasionally, 10 pounds frequently and occasionally crouch, (Tr. at 102), while it was Dr. Luna's opinion that plaintiff could only lift or carry 20 pounds rarely, 10 pounds occasionally and rarely crouch. (Id. at 584.)

[7] Although it does not appear that either the ALJ or plaintiff's counsel asked the vocational expert a hypothetical question that included the limitations indicated by Dr. Ruff's opinion, his opinion would presumably be even more restrictive than Dr. Luna's, as it was Dr. Ruff's opinion that plaintiff would be absent from work about 4 days per month, (Tr. at 580), while Dr. Luna's opinion indicated that plaintiff would only be absent from work about 2 days per month. (Id. at 584.)

[8] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 15) is granted;
2. Defendant's cross-motion for summary judgment (Dkt. No. 22) is denied;
3. The Commissioner's decision is reversed; and
4. This matter is remanded with instructions to award benefits.

Dated:  August 28, 2015

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\martin2671.ord.docx